```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF OHIO
                    WESTERN DIVISION


CNG Financial Corporation,   )
                             )
         Plaintiff,          )    Case No. 1:08-CV-283
                             )
vs.                          )
                             )
Registration Technologies,   )
Inc., et al.,                )
                             )
                             )
         Defendants.         )
```

O R D E R

This matter is before the Court on the following motions filed by Defendants A.O. Ventures, LLC and Samuel Osborn: motion to dismiss complaint (Doc. No. 13), motion to take judicial notice (Doc. No. 14), motion to strike declaration of Michael A. Marrero (Doc. No. 30), motion to strike declaration of Jeffrey R. Schaefer (Doc. No. 35), and motion to file sur-reply brief (Doc. No. 41).  For the reasons set forth below, Defendants' motion to dismiss (Doc. No. 13) is **GRANTED IN PART AND DENIED IN PART.**  The remaining motions are **MOOT.**

I. Background

On July 23, 2009, Plaintiff CNG Financial Corporation ("CNG") filed a first amended complaint (Doc. No. 6) against Defendants A.O. Ventures, LLC and Samuel Osborn asserting claims under the Lanham Act, 15 U.S.C. § 1125, et seq., for false

1

designation of origin (First Claim for Relief), dilution of famous marks (Third Claim for Relief), and unfair competition (Fifth Claim for Relief). The first amended complaint also asserts a state common law claim for trademark infringement (Second Claim for Relief) and an Ohio statutory deceptive trade practices claim (Fourth Claim for Relief).[1]  For purposes of the motion to dismiss, the following facts are taken from the first amended complaint and are assumed to be true.

      CNG is an Ohio Corporation with its principal place of business located in Mason, Ohio.  First Amended Complaint ¶ 4. CNG is in the consumer loan business under its CHECK 'N GO service mark.  Id. ¶ 5.  Defendant Osborn is a resident of the State of California.  Id. ¶ 7.  Defendant A.O. Ventures, LLC is a business operated by Osborn with a principal place of business located in San Francisco, California.  Id. ¶ 8.

      CNG has been offering consumer loans under the name CHECK 'N GO since 1995.  Id. ¶ 9.  On June 9, 2006, CNG applied to the Patent and Trademark Office ("PTO") to register the mark CHECK 'N GO.  Id.  ¶ 10.  On December 5, 2006, the PTO approved CNG's application to register CHECK 'N GO and it was assigned registration number 3,179,148.  Id. ¶ 12.  CNG also holds a

---

[1]  CNG voluntarily dismissed its claims against Defendant Registration Technologies, Inc. on August 1, 2008.  Doc. No. 7.

registration for CHECK 'N GO covering check cashing under registration number 2,065,791.  Id.

CNG has spent considerable sums of money to advertise and promote services identified by the CHECK 'N GO mark, including operating an internet website at www.checkngo.com.  Id. ¶ 14.  Because of CNG's advertising and promotional efforts, CHECK 'N GO is widely known as identifying CNG's services.  Id. ¶ 15.  The CHECK 'N GO mark is distinctive, strong and famous.  As a result of widespread and favorable public acceptance and recognition, the CHECK 'N GO mark has tremendous goodwill and is a valuable asset of CNG.  Id. ¶ 16.

The first amended complaint alleges that the Defendants have been advertising, promoting, and offering for sale consumer loans under the CHECK 'N GO mark on their website at www.samedaypayday.com/directorycontent.php?id=CheckNGo since at least March of 2008.  Id. ¶ 19.  The first amended complaint further alleges that Defendants advertise, promote, and offer for sale consumer loans on internet-based search engines such as www.google.com.  Id. ¶ 20. CNG is not affiliated with Defendants in anyway nor has CNG authorized Defendants to use its mark.  Id. ¶¶ 18, 21.  Defendants' use of CNG's mark is likely to confuse the public to believe that their products and services are offered, endorsed, sponsored by, or affiliated with CNG.

Moreover, actual confusion may have already occurred in the marketplace. Id. ¶¶ 22-23.

Defendants filed a motion to dismiss in response to the First Amended Complaint. Defendants' motion has two components. First, Defendants argue that the complaint should be dismissed pursuant to Rule 12(b)(6) on the grounds that their use of CNG's mark is not actionable because it is nominative fair use of the mark. Second, Defendants argue that the complaint should be dismissed as to Defendant Osborn pursuant to Rule 12(b)(2) because it fails to allege facts which show that he is subject to personal jurisdiction in this district.

With one exception, which will be discussed further below, Defendants do not contend in their Rule 12(b)(6) motion that the complaint as pled fails to state claims for relief for federal and state trademark violations. Rather, Defendants argue that their use of the CHECK 'N GO mark is protected under the fair use doctrine. Defendants state that they do not compete with CNG nor do they offer consumer loan services. Rather, according to Defendants, their website offers information to consumers about various payday loan companies operating in the United States, including CNG. Defendants state further that their website has a prominent disclaimer informing visitors that the information contained on its website is not sponsored by, endorsed or affiliated with CNG. Defendants also dispute that

they advertise, promote, or offer for sale consumer loans through web-based search engines.

Filed in support and in conjunction with their motion to dismiss, Defendants filed a motion (Doc. No. 14) for the Court to take judicial notice of the following facts:

1. That the search engine results submitted by CNG with its complaint omit the first page (results 1-10) and instead show only results 11-20.

2. The homepage of Defendant's website, www.samedaypayday.com.

3. Defendants' "Learning Center" webpage, located at www.samedaypayday.com/learningcenter.php.

4. Defendants webpage entitled "Payday directory," located at www.samedaypayday.com/paydaydirectory.php.

5. The Ohio Roster of Companies licensed to cash checks.

6. The Ohio Roster of Companies licensed to lend checks.

7. Defendants' webpage describing Check 'N Go, located at www.samedaypayday.com/directorycontent.php?id=Check_N_Go.

In addition to asserting their fair use defense, Defendants argue that CNG's Fifth Claim for Relief (federal unfair competition) is duplicative of its First Claim for Relief (false designation of origin) and should be dismissed.

In response to Defendants' Rule 12(b)(6) motion, CNG argues that Defendants are not challenging the sufficiency of their allegations.  Rather, CNG argues, Defendants have improperly attached matters outside the pleadings to their motion in an attempt to obtain a premature ruling on the merits of their defense.  Nevertheless, in rebuttal to Defendants' assertion of

the fair use defense, CNG has attached screenshots from Defendants' website which indicate that they do offer consumer or payday loans through www.samedaypayday.com. The screenshots are authenticated by an affidavit filed by one of CNG's trial lawyers, Jeffrey R. Schaefer. In response to Defendants' Rule 12(b)(2) motion, CNG argues that it needs discovery to determine whether Defendant Osborn is subject to jurisdiction here but on information and belief states that discovery will show that A.O. Ventures is an alter ego of Osborn and that he controls A.O. Ventures' alleged infringing activities. Supporting this contention, CNG has attached as an exhibit the affidavit of another of its lawyers, Michael Marrero, and an email from Defendant Osborn which CNG claims is an admission by Osborn that he admits controlling A.O. Ventures and the alleged infringing content of www.samedaypayday.com.

        Defendants then filed a reply brief in support of their motion to dismiss (Doc. No. 31) and a motion to strike Mr. Marrero's affidavit (Doc. No. 30). Defendants' motion to strike argues that the email attached to the affidavit is not admissible under Fed. R. Evid. 408 because it constitutes an offer to compromise a claim. CNG filed a memorandum in opposition to Defendants' motion to strike Mr. Marrero's affidavit on April 20, 2009 (Doc. No. 32). In its brief, CNG argues that consideration of Mr. Marrero's affidavit and the email is not precluded by Rule

408 because they are not being offered to establish Defendant Osborn's liability or damages. Rather, CNG argues that this evidence is being offered to establish Osborn's control over A.O. Ventures. In support of this brief, CNG attached the affidavit of Mr. Schaefer with exhibits of publicly available documents which purport to demonstrate Osborn's control of A.O. Ventures. CNG contends that the information reflected in these exhibits is no different in substance than the information in the email submitted with Mr. Marrero's affidavit. CNG is apparently arguing, therefore, that it would be harmless to consider the email in light of these publicly available documents. Defendants then filed a motion to strike Mr. Schaefer's affidavit on the grounds that it is a belated and improper attempt to cure pleading deficiencies in CNG's complaint.

On May 5, 2009, CNG filed a notice of supplemental authority (Doc. No. 37) in support of its memorandum in opposition to the motion to dismiss. The supplemental authority is a recent opinion from the United States District Court for the Northern District of Illinois which addresses A.O. Ventures' assertion of the fair use defense in the context of a Rule 12(b)(6) motion. Defendants subsequently and unilaterally categorized CNG's notice of supplemental authority as a sur-reply brief and then moved to file a response to the alleged sur-reply

brief (Doc. No. 41). Briefing on this motion was completed on June 25, 2009.

It now appears that the briefing has been completed on this series of interrelated motions and that they are ready for disposition.

## II. Defendants' Rule 12(b)(6) Motion

Defendants move to dismiss the first amended complaint pursuant to Rule 12(b)(6) for failure to state a claim for relief. As indicated above, however, Defendants do not contend that the factual allegations in the complaint fail to state claims for trademark infringement. Rather, Defendants contend that, in light of the exhibits attached to the complaint as well as the documents they want to the Court to take judicial notice of, they are entitled to dismissal of the complaint based on their nominative fair use defense.

A complaint may be dismissed pursuant to Rule 12(b)(6) if an affirmative defense appears on the face of the complaint. Jones v. Bock, 549 U.S. 199, 215 (2007). As Judge Rice observed in Reed Elsevier, Inc. v. TheLaw.net Corp., 269 F. Supp.2d 942 (S.D. Ohio 2003), affirmative defenses which typically appear on the face of the complaint are privileges, immunities, failure to exhaust administrative remedies, and statutes of limitations. Id. at 947 n.3.

The touchstone of liability for trademark infringement is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties. See Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center, 109 F.3d 275, 279 (6th Cir. 1997). There are then a number of factors to consider in determining whether likelihood of confusion exists. See id. "Fair use" is a defense to a claim of trademark infringement. KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 118 (2004). The fair use defense is available to a party whose:

> use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin[.]

15 U.S.C. § 1115(b)(4). As the Court explained in KP, however, the defendant does not have the burden to prove fair use by a preponderance of the evidence; rather, fair use is in the nature of rebuttal and is evidence which undercuts the plaintiff's showing of likelihood of consumer confusion. Id. at 120-21.

"Nominative fair use" is a species of the fair use defense adopted by the Ninth Circuit in New Kids on the Block v. News America Pub., Inc., 971 F.2d 302 (9th Cir. 1992). An alleged infringer is entitled to the nominative fair use defense

9

when: 1) the product or service in question is one not readily identifiable without use of the trademark; 2) only so much of the mark or marks are used as is reasonably necessary to identify the product or service; and 3) the user must not have done anything that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. Id. at 308. This defense applies when the defendant uses the plaintiff's mark to describe the plaintiff's product rather than his own product. Id. There is considerable doubt, however, whether the Sixth Circuit recognizes nominative fair use as a valid defense to a trademark infringement claim. In PACCAR Inc. v. TeleScan Tech., L.L.C. 319 F.3d 243 (6th Cir. 2003), the Court stated that "this circuit has never followed the nominative fair use analysis, always having applied the Frisch's Restaurants test. We are not inclined to adopt the Ninth Circuit's analysis here." Id. at 256.[2] The Court notes that KP overruled PACCAR, but apparently only to the extent that PACCAR held that "a finding of a likelihood of confusion forecloses a fair use defense." See KP, 543 U.S. at 116-17. Other district courts in this Circuit have continued to rely on PACCAR to question the viability of nominative fair use as a defense in a trademark infringement action. E.g.,

---

[2] Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc., 670 F.2d 642, 648 (6th Cir. 1982), established the factors to consider whether likelihood of confusion would result from the defendant's use of the mark.

Volkswagen AG v. Dorling Kindersley Pub., Inc., 614 F. Supp.2d 793, 811 (E.D. Mich. 2009); State Farm Mut. Auto. Ins. Co. v. Sharon Woods Collision Center, Inc., No. 1:07cv457, 2007 WL 4207158, at *8 (S.D. Ohio Nov. 26, 2007) (Barrett, J.). Moreover, the Court in Volkswagen specifically declined to adopt nominative fair use defense in light of the Sixth Circuit's refusal to do so. 614 F. Supp.2d at 811.

In any event, assuming without deciding that Defendants can assert nominative fair use as a defense in this case, it is inappropriate to dismiss the complaint pursuant to Rule 12(b)(6) because it is not clear from the face of the complaint that Defendants will prevail as a matter of law on this defense. Even if the Court takes judicial notice of the documents submitted by Defendants in support their motion, which they contend establish nominative fair use, the exhibits submitted by CNG in their memorandum suggest that Defendants' website offers or markets consumer loans to visitors. Therefore, at the outset there seem to be factual issues as to whether Defendants make more than just descriptive use of CNG's mark. Moreover, as the Court indicated in KP, fair use is a defense that undermines the plaintiff's showing of consumer confusion. At this juncture of the case, however, CNG has not had any opportunity to demonstrate consumer confusion. The first amended complaint, however, specifically alleges that consumer confusion is likely to occur and may in

11

fact have already occurred. For purposes of the motion to dismiss, the Court accepts that allegation as being true. As a result, the complaint sufficiently states a claim for trademark infringement. Defendants argue that the exhibits attached to the first amended complaint clearly establish their nominative use defense and their contention that no consumer confusion can result. In particular, they highlight the disclaimer indicating that their website is not affiliated with or endorsed by CNG. They also argue that some consumer confusion is compatible with the fair use defense. While these are all legitimate points for consideration, they do not establish fair use as a matter of law. The disclaimer on Defendant's website does not necessarily rebut a finding of likelihood of confusion. See Audi AG v. D'Amato, 469 F.3d 534, 546 (6th Cir. 2006). Finally, the allowable degree of consumer confusion as a result of Defendants' alleged use of CNG's mark seems appropriate for resolution only by the finder of fact.

Accordingly, for all of the above reasons, Defendants' motion to dismiss the first amended complaint pursuant to Rule 12(b)(6) on the grounds that their fair use defense has been established as a matter of law is not well-taken and is **DENIED.** In light of this conclusion, Defendants' motion to take judicial notice and motion to file response to CNG's sur-reply brief are **MOOT.**

The Court does agree, however, that CNG's Fifth Claim for Relief for federal unfair trade practices is generally duplicative of its First Claim for Relief. Champions Golf Club, Inc. v. The Champions Golf Club, Inc., 78 F.3d 1111, 1122-23 (6th Cir. 1996). Therefore, to the extent that the Fifth Claim for Relief is duplicative of CNG's First Claim for Relief for false designation of origin, the motion to dismiss is well-taken and is **GRANTED**. Nevertheless, to the extent that the Fifth Claim for Relief contains facts that are relevant to the First Claim for Relief, they remain operable factual allegations of the first amended complaint.

### III. Defendants' Rule 12(b)(2) Motion

Finally, Defendants move to dismiss the first amended complaint as to Defendant Osborn on the grounds that it fails to establish that he is subject to personal jurisdiction in this district.

Trademark infringement causes tortious injury in the plaintiff's principal place of business as well as the state where its primary office is located. Bird v. Parsons, 289 F.3d 865, 876 (6th Cir. 2002). Accordingly, an alleged trademark infringer will be subject to personal jurisdiction under Ohio's long-arm statute for causing tortious injury in Ohio. Id. The first amended complaint alleges that Defendants' alleged "infringement is occurring in every jurisdiction in the United

States, including Ohio." Thus, the complaint contains at least some indication that Mr. Osborn is subject to personal jurisdiction in Ohio. Whether the exercise of personal jurisdiction over Mr. Osborn otherwise comports with the Due Process Clause can be fleshed out in discovery. <u>Chrysler Corp. v. Fedders Corp.</u>, 643 F.2d 1229, 1240 (6th Cir. 1981).

Accordingly, Defendants' motion to dismiss pursuant to Rule 12(b)(2) is **DENIED WITHOUT PREJUDICE TO RENEWAL.** In light of this conclusion, Defendants two motions to strike are **MOOT.**

      **IT IS SO ORDERED**

Date September 2, 2009            s/Sandra S. Beckwith
                                    Sandra S. Beckwith
                           Senior United States District Judge